IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN SLEVIN,

    Plaintiff,

vs.                                                  No. CIV-

BOARD OF COUNTY COMMISIONERS
FOR THE COUNTY OF DONA ANA;
THE DONA ANA COUNTY DETENTION CENTER,
CHRISTOPHER BARELA,
JOHN DOES 1-3,

    Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

Plaintiff brings this complaint for damages caused by the violation of his civil and constitutional rights: Plaintiff files this complaint under the federal Civil Rights Act, and the Constitution of the United States. Plaintiff also brings claims under the New Mexico Tort Claims Act. In support of this Complaint, Plaintiff alleges the following:

## JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C 1331 and 42 U.S.C §§1983 and 1988. Venue us proper as the acts complained of occurred exclusively within Dona Ana County, New Mexico.

## PARTIES

2. Plaintiff, Stephen Slevin, is an individual and former resident of Dona Ana County, New Mexico.

3. Defendant Board of County Commissioners for the County of Dona Ana, (hereinafter "Board"), is a governmental entity within the State of New Mexico and a "person" under 43 U.S.C. § 1983. At all times material to this Complaint the Board was the employer of the individual defendants.

4. Defendant Dona Ana County Detention Center ("DACDC") is the agency responsible for the safe, secure and humane housing of detainees in Dona Ana County.

5. Defendant Christopher Barela at all material times was the Director of DACDC and is sued in his individual and official capacities. Defendant Barela was acting under color of state law and within the scope of his employment at all material times.

6. Defendant John Doe 1 is the case worker assigned to Plaintiff and is sued in his individual capacity. John Doe 1 was acting under color of state law and within the scope of his employment at all material times.

7. John Doe 2 is the person entrusted with the responsibility to provide medical services to Plaintiff during his incarceration, and is sued in his individual and official capacities. John Doe 2 was acting under color of state law and within the scope of his employment at all material times.

8. John Doe 3 is the supervisor who worked in the solitary confinement pod where Plaintiff was housed and is sued in his individual and official capacities. John Doe 3 was acting under color of state law and within the scope of his employment at all material times.

**FACTUAL BACKGROUND**

9. On August 24, 2005 Plaintiff was booked into DACDC on charges of driving while intoxicated and receiving or transferring a stolen vehicle.

10. Plaintiff had a lifelong history of mental illness when he entered DACDC.

11. Due to the Plaintiff's illness DACDC placed him in segregation.

12. On admission to DACDC Plaintiff was a well nourished, physically healthy, adult male with a mental illness.

13. On May 8, 2007, after approximately eighteen months of solitary confinement, Plaintiff was transferred from DACDC to the New Mexico Behavioral Health Institute at Las Vegas (hereinafter "Las Vegas"), for a psychiatric review.

14. On admission to Las Vegas, Plaintiff was malnourished weighing approximately 133lbs.

15. On admission to Las Vegas, Plaintiff smelled, was disheveled and had an overgrown beard and hair.

16. On admission to Las Vegas, Plaintiff had untreated dental problems and complained of bedsores and a fungus on his skin.

17. On admission to Las Vegas, Plaintiff was not alert to time or situation.

18. On admission to Las Vegas, Plaintiff was unaware he had spent the last eighteen months confined in the county jail.

19. During his stay at Las Vegas, Plaintiff was given mental health care.

20. During his stay at Las Vegas, Plaintiff was reintroduced to human interaction and socialization.

21. During his stay at Las Vegas, Plaintiff became alert and aware of his situation.

22. On May 22, 2007, after only 14 days of mental health treatment Plaintiff was discharged from Las Vegas and returned to DACDC.

23. On his return to DACDC Plaintiff was once again placed in solitary confinement.

24. Plaintiff's mental health again began to deteriorate.

25. Plaintiff requested medical care, including dental treatment.

26. Plaintiff's mental illness was exacerbated by his removal from contact with human beings.

27. Due to the lack of medical care, Plaintiff was forced to pull his own tooth while in DACDC.

28. The charges against Plaintiff were eventually dismissed.

29. Plaintiff was released on June 25, 2007.

30. Plaintiff spent twenty-two months incarcerated as a pre-trial detainee, most of the time spent in solitary confinement.

## COUNT I: VIOLATION OF PROCEDURAL DUE PROCESS

31. Plaintiff restates each of the preceding allegations as if fully stated herein.

32. Plaintiff was placed into extraordinary periods of solitary confinement.

33. Plaintiff was not afforded a hearing before being placed in solitary confinement.

34. In placing Plaintiff in solitary confinement for such long periods of time without affording him a hearing, Defendants denied Plaintiff procedural due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

## COUNT II: VIOLATION OF SUBSTANTIVE DUE PROCESS

35. Plaintiff restates each of the preceding allegations as if fully stated herein.

36. Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions of confinement and adequate medical care.

37. Rather than treat Plaintiff's mental health condition, Defendants chose to place him in solitary confinement.

38. Defendants also failed to provide rudimentary dental care to the point Plaintiff was forced to pull out his own tooth.

39. Defendants failed to treat Plaintiff's bedsores caused by lengthy periods of inactivity.

40. Defendants failed to take care of Plaintiff's hygiene after he lost the ability to care for himself.

41. Defendants knew Plaintiff's mental condition was deteriorating during his time in solitary confinement.

42. As Plaintiff's condition worsened his appearance made it obvious he was in need of immediate medical attention.

43. Defendants failed to take reasonable measures to prevent the harm caused by such a lengthy period of solitary confinement.

44. Defendants knew Plaintiff faced a substantial risk of serious mental harm if his conditions of confinement did not meet contemporary standards of decency.

45. Defendants acted with deliberate indifference to this risk.

46. Plaintiff's conditions of confinement amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution.

### COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

47. Plaintiff restates each of the preceding allegations as if fully stated herein.

48. plaintiff is entitled to be free from discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq.

49. Defendants failed to accommodate Plaintiff's mental disability and denied him the benefits and services of the jail by reason of his mental disability.

50. Plaintiff was denied social interaction by reason of his mental disability.

51. Plaintiff was unnecessarily segregated due to his mental disability.

52. Plaintiff was denied reasonable standards of hygiene, dental and medical care due to his mental disability.

53. As a proximate and foreseeable result of Defendants' discriminatory acts and omissions Plaintiff suffered injuries including pain and suffering, emotional distress and an exacerbation of his mental illness.

## COUNT IV: MUNICIPAL LIABILITY

54. Plaintiff states each of the preceding allegations as if fully stated herein.

55. Defendants Board and Barela are policy makers responsible for hiring training and supervision of its employees.

56. The policies, customs, decisions and practices of Defendants Board and Barela have created a climate within DACDC whereby the mentally ill are deprived of adequate medical care and humane conditions of incarceration.

57. Defendants Board and Barela have a policy and custom of placing inmates with mental disabilities into solitary confinement.

58. There is a causal connection between Defendants' policies and the violation of Plaintiff's constitutional rights with amounts to deliberate indifference.

## COUNT V: FALSE IMPRISONMENT UNDER THE TORT CLAIMS ACT

59. Plaintiff restates each of the preceding allegations as if fully stated herein.

60. Plaintiff was placed in solitary confinement in violation of his constitutional rights.

61. Plaintiff's prolonged detention in solitary confinement was not justified or privileged under state law and therefore constituted false imprisonment.

62. The Board and DACDC Defendants are responsible to Plaintiff under the doctrine of respondeat superior for the conduct of their employees.

63. The actions of Defendants were willful, wanton and in gross and reckless disregard of Plaintiff's rights.

## COUNT VI: NEGLIGENT MAINTENANCE OF A BUILDING UNDER THE TORT CLAIMS ACT

64. Plaintiff restates each of the preceding allegations as if fully stated herein.

65. Defendants know they are entrusted with the detention of large numbers of mentally ill inmates.

66. Defendants' facility is not designed to house people with severe mental illnesses.

67. Defendants owed Plaintiff a duty of care not to house him in a manner likely to cause injury.

68. In operating DACDC Defendant chose to house Plaintiff in solitary confinement rather than in a medical facility capable of treating his illness.

69. By subjecting Plaintiff to such a long period of solitary confinement Defendants breached their duty to house Plaintiff in a reasonably prudent manner.

70. Plaintiff suffered injuries as a direct result of Defendants' negligent conduct.

## DAMAGES

71. As a result of the foregoing, Plaintiff has suffered damages and injuries including but no limited to, physical injuries, pain and suffering, and severe psychological and emotional distress.

## JURY DEMAND

72. Plaintiff hereby demands a trial by jury on all counts so triable.

Wherefore, Plaintiff requests judgment as follows:

1. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.
2. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.
3. Reasonable costs and attorney's fees incurred in bringing this action.
4. Such other and further relief as the Court deems just and proper.

Respectfully Submitted by,

/s/Matthew Coyte
MATTHEW COYTE
COYTE LAW P.C.
1000 Second St. NW
Albuquerque, NM 87102
Tel: (505) 244-3030
Fax: (505) 244-1406