**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**STEPHEN SLEVIN,**

**Plaintiff,**

**v.** **No. CIV 08-01185 MV/SMV**

**BOARD OF COMMISSIONERS FOR THE COUNTY OF DOÑA ANA, et al.,**

**Defendants.**

# TRIAL BRIEF

Pursuant to the Trial Court's pre trial deadlines for civil cases, Plaintiff hereby presents the following trial brief describing each claim along with some of the anticipated evidence supporting it.

## Conditions of Confinement

Plaintiff, a pre trial detainee whose charges were eventually dismissed, claims his due process rights were violated based on inhumane conditions of confinement which failed to meet contemporary standards of decency. Plaintiff will prove Defendants were deliberately indifferent to his health and safety and such indifference caused him serious harm. The evidence will demonstrate Mr. Slevin entered the Dona Ana County Detention Center in August 2005 a physically healthy man suffering from depression. A booking photograph will demonstrate his physical appearance at this time. (*See* Exhibit 1 attached hereto). Plaintiff was placed into solitary confinement in October of 2005 and remained in his cell until May 2007. During this time Plaintiff's mental and physical health deteriorated to such an extent he lost approximately one third of his body weight and became legally incompetent to stand trial. The evidence will demonstrate he went

enormous periods of time without leaving his cell. Photographic evidence of his condition, taken on May 8, 2007 at the New Mexico Behavioral Health facility in Las Vegas, confirms his truly shocking condition. (*See* Exhibit 2 attached hereto). Witness testimony will describe how badly he smelled, how his toenails had grown so long they curled under his feet, how he was suffering from a fungal infection on his skin and how he had bed sores. Expert testimony will describe how the effects of prolonged solitary confinement coupled with a lack of medical care caused Plaintiff to enter a dissociative delirium and resulted in his current PTSD diagnosis. Witness testimony will describe how Defendant Barela used the solitary cells of Fox 2 pod, as a place to house the mentally ill. Witnesses will describe how the mentally ill inmates in Fox 2 were confined to their cells for long periods of time, how they did not get adequate medical care and how deplorable the conditions were in that pod. Witness testimony will describe how there were more cells in Fox 2 than hours in the day and as such it was impossible to give each inmate his one hour of "recreation" per day. The Defendants' own expert witness will testify to the inhumane conditions of Plaintiff's confinement.

Evidence of deliberate indifference will come from the photographs themselves, but also from the fact the Defendants were placed on written notice of the problems in Fox 2. At the time Plaintiff was in his solitary cell, rocking back and forth beneath a blanket, the facility was threatened with a lawsuit based on deliberate indifference to the mental health needs of inmates in Fox 2. After Defendants failed to make significant changes a lawsuit was eventually filed. Documentary evidence exists of Defendant Barela and Defendant Zemek justifying the care they were providing inmates in Fox 2 and

denying deliberate indifference. Despite this notice, Plaintiff continued to decay in his solitary cell even while litigation was pending.

Additional evidence of deliberate indifference exists in Plaintiff's treatment after he returned from Las Vegas. Instead of addressing his housing situation, or providing him with the necessary medical care, Defendants placed Plaintiff back into his solitary cell. Plaintiff's mental health immediately began to decompensate. It was during this time frame he was forced to pull out his own tooth.

In summary, both experts, (Plaintiff's and Defendants'), will testify to the inhumane conditions of confinement. Numerous witnesses and documents will point to the deliberate indifference standard and Plaintiff's expert will testify to Plaintiff's lifelong mental illness caused by his conditions of confinement.

**Inadequate Medical Care**

Plaintiff claims he was denied adequate medical care for sufficiently serious mental, physical and dental problems that were so obvious even a lay person would have recognized the need for a doctor's attention. The absence of, and delay in obtaining, this medical attention resulted in a lifelong PTSD diagnosis, considerable pain and emotional suffering. This failure to provide medical care was a result of deliberate indifference.

Evidence of the failure to provide adequate medical care will come from both Plaintiff's and Defendants' expert witnesses. Additionally, Defendant Zemek will admit of his failure to provide adequate medical care and will admit to failing to meet his ethical obligations to do so. Defendant Zemek, a nurse practitioner, will admit to prescribing complicated psychotropic medications to Plaintiff without ever seeing him. Plaintiff's medical file demonstrates Mr. Zemek renewing prescriptions for his patient for

at least ten months without ever going to see him. Defendant Zemek will admit to taking on too much responsibility as the jail medical director and this, in combination with another part time job, inevitably led to substandard care. Evidence of his deliberate indifference comes from his attempts to justify the lack of medical care in the face of a pending lawsuit, and to take on the role as a mental health provider without training to do so. He will testify he took on the role of medical director after the Doctor who held that position left, took on the role of two nurse practitioners and the role as head of nursing. During this same time frame despite being on call 24 hours per day, 7 days a week, he took on additional employment with another medical facility every other weekend. When Mr. Zemek left the facility, Defendant Barela failed to provide an adequate replacement and indeed allowed Plaintiff to receive medication prescribed by Mr. Zemek months after Mr. Zemek had left the facility and more than a year after Mr. Zemek had last seen his patient.

The deliberate indifference standard is starkly demonstrated by Plaintiff's attempts to receive medical treatment through very descriptive sick calls. These letters went mostly unheeded until December 2005 when Plaintiff lost the ability to ask for help anymore. From the beginning of 2006, through to May of 2007, Plaintiff was unable to meaningfully seek medical care, and it was during this time frame he disappeared into a delirium.

Plaintiff expects Defendants to attempt to introduce evidence that the community standard for mental health care was substandard and attempts were made to hire qualified staff but these attempts were unsuccessful. Plaintiff will object to this testimony and will seek to avoid a mini trial on how available mental health care is in the Las Cruces area.

Despite the factual dispute, the evidence is irrelevant to the constitutional standard which requires a jail to provide adequate medical care and if none is available in the jail to refer the inmate to a facility which is capable of attending to the patient's needs. Defendants expect to introduce this evidence to mitigate the possibility of punitive damages.

**Procedural Due Process**

Plaintiff clams his incarceration in a solitary cell without any form of periodic review violates a liberty interest without due process of law. Plaintiff will prove his conditions of confinement were atypical and imposed a significant hardship on him as compared with the ordinary incidents of life in a jail.

Defendant Barela will describe how life in solitary differs from the general population. This includes no access to natural light or outdoor recreation, restrictions on movement, isolation from other inmates, no access to rehabilitative programs including AA meetings or substance abuse lessons, no access to religious services, and reduced access to commissary items. Evidence also exists that Fox 2 houses people accused of disciplinary infractions and is therefore used to punish inmates. This evidence demonstrates a significant hardship as compared to ordinary life in a jail, and therefore carries with it a liberty interest requiring some form of due process. The type of process is included in the jail's policy and procedure manuals which dictate a daily classification review of Plaintiff's housing under one policy, and a weekly review under another.

Plaintiff will prove he received no such classification review. In fact when Plaintiff's initial classification was to general population. Defendant Barela will testify it took an override of his classification to send him to segregation. This override required Defendant Barela's approval and signature, however it was almost one year into

Plaintiff's stay that Mr. Barela eventually signed this override. Barela will testify he signed the override authorizing Plaintiff's continued confinement in solitary without ever going to see Plaintiff or check on his well being.

Plaintiff will therefore prove he received no due process regarding his liberty interest and even after he returned to the facility from Las Vegas was placed back into his solitary cell without a classification review. Defendants will introduce a classification sheet dated October 12, 2005 which indicates Plaintiff had "refused population" and was therefore in solitary of his own free will.

**Americans With Disabilities Act**

Plaintiff will use much of the same evidence listed above to prove this claim. Most particularly Plaintiff will prove the mentally ill were placed in Fox 2 as a matter of routine, and that being in Fox 2 deprived them of participation in many of the above mentioned rehabilitative services.

**Municipal Liability**

Plaintiff will prove the failure to provide adequate mental health care, the failure to provide humane conditions of confinement, and the failure to provide meaningful classification reviews to the mentally ill in Fox 2 was part of a policy and practice of the facility. Plaintiff will further prove this practice and policy inevitably led to the constitutional violations described above.

Defendant Barela will testify he was in charge and responsible for all policies and procedures in the jail. Additionally he will testify it was his responsibility to ask for the necessary funding to run the jail and it was the Board of County Commissioners responsibility to see the funds were procured. He will also testify he was asked, and

complied with requests to cut the jail's budget. He will testify he was aware some inmates were not receiving adequate medical care in the jail in the time period in question. Barela will further testify he was aware the jail did not meet the national standards for running a detention center and he will also state he did not have enough funding to meet those standards. Despite this knowledge Defendant Barela continued to operate his facility without adequate medical care and chose to house the mentally ill in solitary confinement where they could be more easily managed on the resources he had. He will testify to signing classification overrides of the people in Fox 2 without ever investigating the reason for them. This led to a practice and policy of housing the mentally ill in segregation which ultimately led to the constitutional violations described above.

**State Tort/False Imprisonment**

The same evidence will be produced for the false imprisonment claim as the constitutional procedural due process claim. Plaintiff was placed in a highly restrictive form of housing without a reasonable justification to do so. It is important to note, Plaintiff is not seeking to prove he was not legally in the custody of the jail on this claim, but rather his confinement in segregation amounted to false imprisonment. Plaintiff will object to all testimony from Defendants blaming the public defender, the district attorney, or the state district judge for his failure to be released from the jail in a reasonable time frame as such evidence is irrelevant to his conditions of confinement claims and to his false imprisonment claim.

**State Tort/Negligent Maintenance of a Building**

Plaintiff expects to prove this claim with the above mentioned evidence that the jail was negligent in its operations to the point the jail became dangerous beyond what is normally expected in detention facilities. The act of housing the mentally ill in solitary without any medical oversight and without any periodic classification review is so obviously dangerous it amounts to negligence. Plaintiff expects to prove this negligence proximately caused his damages.

**Other Evidence**

The Court should be aware there will be video taped evidence of the jail cell and the padded cell where Plaintiff was housed. Also, there will be numerous exhibits documenting Plaintiff's stay in the facility including his medical file, movement sheets, recreation and commissary logs. A demonstrative aid of a life size mock up of the jail cell will also be used subject to court approval.

Respectfully submitted,

/s/ Matthew E. Coyte
Matthew E. Coyte
Attorney for Plaintiff
1000 Second Street
Albuquerque, NM 87102
(505) 244-3030

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of January, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

John W. Caldwell
john@johncaldwell.com

/s/Matthew E. Coyte
Matthew E. Coyte