IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN SLEVIN,

       Plaintiff,

       vs.

Civil No. 08-cv-1185 MV/SMV

BOARD OF COMMISSIONERS FOR THE
COUNTY OF DOÑA ANA, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for New Trial Based on Nondisclosure of Attorney-Client Relationship Between Plaintiff's Counsel and Witness John Oates [Doc. 126]. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the Motion is not well-taken and will be denied.

### BACKGROUND

Plaintiff Stephen Slevin commenced the instant action on December 28, 2008. *See* Doc. 1 (Complaint). Plaintiff had been arrested on state charges of driving while intoxicated and receiving or transferring a stolen vehicle, and was booked into the Doña Ana County Detention Center (the "Detention Center") on August 24, 2005. *Id*. at 2. He remained at the Detention Center until June 25, 2007, when the charges against him were dismissed. *Id.* at 4. Plaintiff alleged that, because of his mental illness, officials at the Detention Center kept him in administrative segregation for virtually the entire 22 months of his incarceration, without humane conditions of confinement or adequate medical care, and without periodic review of his confinement, causing his physical and mental deterioration. *Id.* at 2-4. Based on these

1

allegations, Plaintiff claimed that Defendants violated his procedural due process and substantive due process rights and his rights under the Americans with Disabilities Act, and committed the torts of false imprisonment and negligent maintenance of a building.  *Id.* at 4-7.

On February 16, 2010, Matthew Coyte, Plaintiff's counsel, took the deposition of John Oates.  See Doc. 133-1 (Deposition Tr. 1/16/10).  At the time, Mr. Oates was confined at the Central New Mexico Correctional Facility in Los Lunas ("Los Lunas Level Two"), and the deposition was held there.  Previously, Mr. Oates had been detained at the Detention Center from March 2003 to June 2006, where he was held in administrative segregation for the majority of his detention.  *Id.* at 5-6.  At the beginning of the deposition, Mr. Coyte advised Mr. Oates that neither he nor Mr. Caldwell, Defendants' counsel, represented his interests.  *Id.* at 3.  Both Mr. Coyte and Mr. Caldwell questioned Mr. Oates during the deposition.  In response to the attorneys' questions, Mr. Oates testified about the conditions of administrative confinement at the Detention Center, and contrasted those conditions to those of the general population at the Detention Center.  *See id.* at 7-13, 18-35, 39-44, 69-71.

At one point during the deposition, Mr. Oates indicated that he needed certain books that the prison would not provide in order to complete a class he was taking.  *See* Doc. 133 (Affidavit of Mr. Coyte) ¶ 9.  Mr. Caldwell offered to pay for Mr. Oates' books, and Mr. Coyte offered to pay for half the cost, if necessary.  *Id.* ¶ 10.  Ultimately, Mr. Caldwell was unable to arrange to pay for Mr. Oates' books, and sometime in 2010, Mr. Coyte communicated with Mr. Oates about Mr. Caldwell's unsuccessful efforts.  *Id.* ¶¶ 17-18.

Approximately nine months after Mr. Oates' deposition, Mr. Coyte learned of allegations that Los Lunas Level Two had been using a form of sexual humiliation against the prisoners.  *Id.* ¶ 19.  In January 2011, Mr. Coyte, along with Jack Bennett Jacks (co-counsel for Plaintiff herein),

visited Mr. Oates to ask about the allegations.  *Id.* ¶ 21.  Mr. Oates indicated that he had been one of the victims of the alleged sexual humiliation.  *Id.*  At that point, Mr. Coyte entered an attorney-client relationship with Mr. Oates as a potential class representative.  *Id.* ¶ 22.  In February 2011, Mr. Coyte filed a putative class action against the Deputy Director of Adult Prisons for the State of New Mexico, the Warden of Los Lunas Two, and unidentified correctional officers at Los Lunas Two, alleging civil rights violations based on the alleged sexual humiliation of prisoners.  *See J.O. v. Dorsey*, No. 11-cv-254 (MCA/GBW), Doc. 1-1.  The class action was removed to federal court in March 2011.  *See id.*, Doc. 1.  Although originally identified as "J.O." in order to protect against retaliation, Mr. Oates' full name was revealed in an amended complaint filed September 29, 2011.  Doc. 133 ¶¶ 32, 44.

In connection with the instant case, Mr. Coyte provided Mr. Caldwell with the telephone numbers of the witnesses he intended to call at trial, including Mr. Oates.  *Id.* ¶ 35.  Plaintiff asserts, and Defendants do not deny, that Mr. Caldwell made no attempt to contact Mr. Oates prior to trial.  *Id.*

Trial in the instant case commenced on January 17, 2012.  During the trial, Plaintiff called Mr. Oates as a witness.  Mr. Oates provided testimony consistent with his deposition testimony contrasting the conditions of administrative confinement with the conditions of the general population at the Detention Center.  *See* Doc. 111 (Trial Tr. 1/19/12) at 58-62, 64-75, 80-81.  In the course of cross examination, Mr. Caldwell made one inquiry of Mr. Oates as to his communications with Mr. Coyte, as follows:  "Prior to your being deposed in 2010, you had spoken with Mr. Coyte on at least two occasions, had you not?"  *Id.* at 93.  Mr. Oates responded, "I spoke with him when I got a letter in the mail.  I went to my case worker and called him to ask what the letter was about.  And I spoke with him once in Los Lunas."  *Id.* at 93-94.  Thereafter,

on redirect examination, Mr. Coyte inquired: "The letter and the telephone conversation with me, Mr. Caldwell just referred to, did I tell you how to testify?" *Id.* at 94. Mr. Oates responded, "No, sir." *Id.* Mr. Coyte then asked, "Did I put anything in your mind as to what – what to say?" *Id.* Mr. Oates again responded, "No, sir." *Id.*

The jury returned a verdict in favor of Plaintiff on all counts. *See* Doc. 96 (Special Verdict Form). Specifically, the jury found Defendants Board of County Commissioners (the "County"), Christopher Barela, Director of the Detention Center, and Daniel Zemek, Medical Director of the Detention Center, liable for depriving Plaintiff of his constitutional rights to humane conditions of confinement, adequate medical care, and procedural due process, and as a result of these constitutional deprivations, found that Plaintiff was entitled to compensatory damages from the County, Barela, and Zemek, and to punitive damages from Barela and Zemek. *Id.* The jury awarded Plaintiff $3 million in punitive damages against Barela, and $3.5 million in punitive damages against Zemek. *Id.* The jury further found Defendant Barela liable for violating Plaintiff's rights under the Americans with Disabilities Act, and as result of this violation, found that Plaintiff was entitled to compensatory damages from Barela. *Id.* Next, the jury found the Detention Center liable for the torts of false imprisonment and negligent operation or maintenance of a building, and as a result of this liability, found that Plaintiff was entitled to compensatory damages from the Detention Center. *Id.* Finally, the jury fixed the amount of compensatory damages at $15.5 million, to include $500,000 for each month that Plaintiff was incarcerated, plus an additional $1 million for each year since Plaintiff's release from custody. *Id.*

The Court entered a Final Judgment in favor of Plaintiff on February 17, 2012. Doc. 105 (Final Judgment). Thereafter, Defendants retained an investigator to interview the jurors. *See* Doc. 126-1 (Affidavit of Mr. Caldwell) ¶ 6. On March 8, 2012, the investigator informed Mr.

Caldwell that he recognized Mr. Oates, witness in this case, as the lead plaintiff in the *Dorsey* class action, and that Mr. Coyte represented Mr. Oates in the *Dorsey* action.  *Id.* ¶ 7.  Mr. Caldwell sent Mr. Coyte an email message inquiring about his discovery.  *Id.* ¶ 9.  Mr. Coyte advised Mr. Caldwell that he did not believe that his representation of Mr. Oates was relevant to the present matter or required a specific disclosure.  *Id.*

Thereafter, on April 4, 2012, Defendants filed the instant motion seeking a new trial based on the nondisclosure of the existence of an attorney-client relationship between Plaintiff's counsel and Mr. Oates.  Doc. 126.  Plaintiff filed a response in opposition on April 20, 2012.  Doc. 132.  Defendants' reply followed on May 2, 2012.  Doc. 138.

## LEGAL STANDARD

Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."  Fed. R. Civ. P. 60(b).  Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).  "Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal."  *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004).

Rule 60(b)(3), in particular, allows a court to relieve a party from a final judgment based on "fraud . . ., misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  "The burden is on the moving party, and they must show 'clear and convincing proof' of fraud, misrepresentation, or misconduct."  *Cummings*, 365 F.3d at 955 (citation omitted).  The Tenth Circuit has interpreted this to require a showing that the opposing party "acted with an intent to deceive or defraud the court, by means of a deliberately planned and carefully executed scheme."

5

*Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (citation omitted); *see also Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291-92 (10th Cir. 2005) (articulating heightened standard applicable in Tenth Circuit to misconduct claims under Rule 60(b)(3)). Further, "the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Zurich*, 426 F.3d at 1290 (citation omitted) (emphasis in original). Finally, "[s]ubsection (b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Id.* (citation omitted).

## DISCUSSION

Defendants ask the Court to grant Rule 60(b)(3) relief from the Final Judgment and a new trial, on the grounds that Plaintiff's counsel "engaged in misconduct prejudicial to the administration of justice, and to Defendants," by failing to disclose that, at the time of trial, Mr. Coyte and Mr. Jacks had an attorney-client relationship with Plaintiff's witness, Mr. Oates. Doc. 126 at 1. In support of their request, Defendants argue that the fact that Plaintiff's counsel also represented Mr. Oates in the *Dorsey* litigation "was exceedingly relevant," and that the jury was unable to properly assess Mr. Oates' credibility in the absence of this "crucially important information bearing on Oates' believability." *Id.* at 5. According to Defendants, the failure to disclose Plaintiff's counsel's representation of Mr. Oates "violated ethical standards and affirmatively presented misleadingly incomplete evidence to the jury, amounting to misconduct that justifies a new trial." *Id.* at 7. Although arguing adamantly about relevancy and ethical considerations, Defendants fail to articulate the legal standard relevant to their motion, much less demonstrate that they have met their burden under that standard.

I. <u>Defendants Fail to Show Clear and Convincing Proof of Fraud</u>.

As set forth above, in order to succeed on a Rule 60(b)(3) motion, Defendants must show "clear and convincing proof of fraud, misrepresentation, or misconduct." *Cummings*, 365 F.3d at 955. In the Tenth Circuit, this standard requires Defendants to show that Plaintiff "acted with an intent to deceive or defraud the court, by means of a deliberately planned and carefully executed scheme." *Yapp*, 186 F.3d at 1231; *Zurich*, 426 F.3d at 1291-92. Defendants nowhere argue that Plaintiff or his counsel acted with such intent to deceive or defraud the Court. Moreover, the facts Defendants offer in support of their motion fall far short of demonstrating "a deliberately planned and carefully executed scheme." Indeed, rather than asserting that Plaintiff's counsel had a "scheme" to actively conceal their representation of Mr. Oates, Defendants instead rest their request for relief on Mr. Coyte's failure, after hearing Mr. Oates' testimony on cross examination, to volunteer information regarding the unrelated *Dorsey* litigation. Under the circumstances, the Court cannot find that this omission amounts to the sort of deception or fraud required to warrant Rule 60(b)(3) relief.

As an initial matter, Mr. Oates' role in the *Dorsey* litigation and Plaintiff's counsel's representation of Mr. Oates in that litigation had been a matter of public record since at least September 2011, four months before trial commenced. Mr. Oates was not a surprise witness; Mr. Caldwell knew in advance of trial that Plaintiff intended to call Mr. Oates as a witness, and thus had the opportunity to investigate, for impeachment purposes, any interest that Mr. Oates might have had in testifying on Plaintiff's behalf. Defendants have pointed to no discovery rule, and the Court has found none, that would have required Plaintiff to undertake to disclose to his adversaries what Defendants now allege amounts to relevant impeachment information.

7

Further, the Court does not find that Mr. Coyte's omission of his attorney-client relationship with Mr. Oates rendered the record materially misleading. Contrary to Defendants' assertion, the facts relevant to Mr. Caldwell's questions and Mr. Oates' responses thereto had *not* changed between the time of Mr. Oates' deposition and trial herein. Doc. 126 at 6. In inquiring of Mr. Oates as to his communications with Mr. Coyte, Mr. Caldwell specifically limited his question to the time period "prior to [Mr. Oates] being deposed in 2010." Doc. 111 at 93. Mr. Caldwell never asked about communications with Mr. Coyte *after* Mr. Oates' deposition. Because of the contours of Mr. Caldwell's question, Mr. Oates' attorney-client relationship with Plaintiff's counsel, which undisputedly began *after* Mr. Oates' deposition, was not relevant to either Mr. Caldwell's questions or Mr. Oates' response thereto. Mr. Coyte's redirect examination, properly limited in scope to the issues raised on cross examination, similarly addressed only the time period prior to Mr. Oates' deposition. Mr. Coyte elicited testimony to clarify that, during the conversations about which Mr. Oates had testified on cross examination, Mr. Coyte did not tell him how to testify, or put anything in his mind as to what to say. *See id.* at 94.

In light of the questions asked on direct, cross and redirect examination, there was nothing "misleadingly incomplete" about Mr. Oates' testimony. Any "known facts" regarding Mr. Oates' communication with Plaintiff's counsel *after* his deposition – whether about the instant case, the *Dorsey* litigation, the status of Mr. Caldwell's attempts to send him textbooks, or otherwise – were simply immaterial. Mr. Coyte thus had no duty to "correct" Mr. Oates' testimony. In the absence of such a duty, the fact that Mr. Coyte did not volunteer information about his

8

representation of Mr. Oates in the *Dorsey* litigation is simply insufficient to demonstrate fraud, misrepresentation, or misconduct within the meaning of Rule 60(b)(3).[1]

II.     <u>Defendants Fail to Show Substantial Interference with Their Defense</u>.

As stated above, on a Rule 60(b)(3) motion, Defendants also must demonstrate that the challenged behavior substantially interfered with their "ability fully and fairly to prepare for and proceed at trial." *Zurich*, 426 F.3d at 1290. Defendants do not argue outright that the nondisclosure of Plaintiff's counsel's representation of Mr. Oates substantially interfered with their ability to prepare for and proceed at trial.[2] Defendants do, however, contend that Plaintiff's failure to disclose the *Dorsey* litigation prevented them from impeaching Mr. Oates' testimony "contrasting his segregated confinement in the [Detention Center] with his less oppressive confinement in the general population in Los Lunas." Doc. 126 at 7. According to Defendants, because Mr. Oates is "pursuing allegations of prisoner abuse at the Los Lunas facility," *id.*, disclosure of the *Dorsey* litigation necessarily would have called into question the credibility of his testimony describing the conditions at the Detention Center as less favorable than those as the Los Lunas facility. *Id.*[3]

This argument ignores the fundamental differences between the instant action and the *Dorsey* litigation. Here, Plaintiff alleged violations based on his placement in administrative

---

1 Notably, Defendants fail to explain precisely how Mr. Coyte could have "corrected" the record to include information regarding the *Dorsey* litigation. To raise this issue on redirect examination would have exceeded the scope of cross examination; to testify himself as to the issue would have required him to become a witness.

2 Indeed, this would be a difficult argument to make, as Defendants were not prevented, by Plaintiff's alleged nondisclosure or otherwise, from contacting Mr. Oates prior to trial, or from questioning him at trial about his pretrial communications with Plaintiff's counsel.

3 Note that, while Defendants frame their motion as one based on "nondisclosure of attorney-client relationship," this argument, along with their argument regarding the unfairness of the judgment (discussed below), are based on the nondisclosure of the *Dorsey* litigation itself, rather than the nondisclosure of Mr. Oates' relationship with Plaintiff's counsel.

9

segregation. In contrast, in *Dorsey*, the plaintiff class alleges that they were subject to sexual humiliation. Accordingly, even if Mr. Oates had provided favorable testimony regarding the conditions of the general population at the facility at issue in the *Dorsey* litigation, his role in a lawsuit alleging violations unrelated to those conditions would provide no basis for calling into question the truth of his trial testimony.

But, in fact, Mr. Oates *did not* provide testimony regarding the conditions of the general population at the facility at issue in the *Dorsey* litigation. Rather, Mr. Oates' testimony about conditions at Los Lunas referred to "RDC in Los Lunas," where he was taken for an evaluation at some point during his three-year stay at the Detention Center, which began in 2003. Specifically, Mr. Oates testified that he left from and then returned to the Detention Center twice, both times for evaluations, once to "Las Vegas," and once to "RDC in Los Lunas." Doc. 111 at 77. Thus, Mr. Oates never so much as mentioned, let alone favorably described, the conditions at the facility where, according to the complaint in *Dorsey*, he was subject to sexual humiliation during his later confinement in 2009. Accordingly, the Court does not find any "inconsistency" between Mr. Oates' testimony and his position in the *Dorsey* litigation. It follows that Plaintiff's failure to disclose the *Dorsey* litigation did not substantially interfere with Defendants' ability to impeach Mr. Oates at trial.

III.   <u>Defendants Fail to Show that the Final Judgment Was Unfairly Obtained</u>.

Rule 60(b)(3) provides relief only where the judgment was "unfairly obtained." *Zurich*, 426 F.3d at 1290. Defendants appear to be arguing that the judgment against them was unfairly obtained because Mr. Oates "was the only witness to testify to conditions at the [Detention Center] from an inmate's perspective and was virtually the only source of adverse evidence about conditions at the facility," and, in hearing his testimony, "[i]t would have made a great difference"

10

to the jury if it had known that Mr. Oates "was pursuing his own lawsuit alleging mistreatment within a New Mexico correctional facility."  Doc. 126 at 4.  Given the totality of the evidence introduced at trial, the Court simply cannot agree that the jury would have reached a different resolution if it had known of the *Dorsey* litigation.

Although Mr. Oates was the only former inmate to testify about the conditions at the Detention Center, his testimony was far from the "only source of adverse evidence" about those conditions.  To the contrary, his testimony was consistent with that of Defendants Barela and Zemek themselves, each of whom admitted that he failed to provide the appropriate level of physical and mental care to Plaintiff.  *See, e.g.*, Doc. 109 (Trial Tr. 1/18/12) at 80-81, 102-106, 130-32, 155.  Further, Mr. Oates' testimony as to the effects of solitary confinement was consistent with the testimony of Plaintiff's expert, Dr. Grassian, who described the lasting physical and mental impact of solitary confinement on Plaintiff, whose life is now "kind of torture."  *See* Doc. 115 (Trial Tr. 1/20/12) at 41, 51, 74, 77.  Given the overwhelming evidence – presented by Plaintiff's and Defendants' witnesses alike – of Defendants' failure to provide Plaintiff with adequate medical care or conditions of confinement, the Court would be hard pressed to find that, because the jury was unaware of Mr. Oates' role in an unrelated litigation, similar to the one here only in that it involves "mistreatment within a New Mexico correctional facility," the judgment against Defendants was "unfairly obtained."

## CONCLUSION

Defendants have not met their burden of demonstrating exceptional circumstances warranting the extraordinary relief for which Rule 60(b)(3) provides.  Specifically, Defendants have failed to demonstrate that the nondisclosure of Plaintiff's counsel's representation of John Oates in the unrelated *Dorsey* litigation constitutes fraud, misrepresentation, or misconduct,

substantially interfered with Defendants' ability to impeach Mr. Oates at trial, or resulted in an unfairly obtained judgment.   Accordingly, Defendants are not entitled to relief from the Final Judgment entered herein, or to a new trial.

**IT IS THEREFORE ORDERED** that Defendants' Motion for New Trial Based on Nondisclosure of Attorney-Client Relationship Between Plaintiff's Counsel and Witness John Oates [Doc. 126], is **DENIED**.

DATED this 8th day of January, 2013.

_____
MARTHA VAZQUEZ
United States District Judge