IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN SLEVIN,

        Plaintiff,

                                        Civil No. 08-cv-1185 MV/SMV

    vs.

BOARD OF COMMISSIONERS FOR THE
COUNTY OF DOÑA ANA, et al.,

        Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

      THIS MATTER comes before the Court on Defendants' Renewed and Supplemented

Recusal Motion [Doc. 122].   The Court, having considered the motion, briefs, relevant law and

being otherwise fully informed, finds that the Motion is not well-taken and will be denied.

**BACKGROUND**

      Plaintiff Stephen Slevin commenced the instant action on December 28, 2008.   *See* Doc. 1

(Complaint).   Plaintiff had been arrested on state charges of driving while intoxicated and

receiving or transferring a stolen vehicle, and was booked into the Doña Ana County Detention

Center (the "Detention Center") on August 24, 2005.   *Id*. at 2.   He remained at the Detention

Center until June 25, 2007, when the charges against him were dismissed.   *Id.* at 4.   Plaintiff

alleged that, because of his mental illness, officials at the Detention Center kept him in

administrative segregation for virtually the entire 22 months of his incarceration, without humane

conditions of confinement or adequate medical care, and without periodic review of his

confinement, causing his physical and mental deterioration.   *Id.* at 2-4.   Based on these

allegations, Plaintiff claimed that Defendants violated his procedural due process and substantive

1

due process rights and his rights under the Americans with Disabilities Act, and committed the torts of false imprisonment and negligent maintenance of a building.   *Id.* at 4-7.

On December 1, 2011, Defendants filed a motion to disqualify this Court ("First Recusal Motion").   Doc. 57.   The Court entered an Order denying Defendants' First Recusal Motion, Doc. 68, and subsequently entered a Memorandum Opinion ("Original Opinion") setting forth the rationale for its Order.   Doc. 112.

After a five-day trial, the jury returned a verdict in favor of Plaintiff on all counts.   *See* Doc. 96 (Special Verdict Form).   Specifically, the jury found Defendants Board of County Commissioners (the "County"), Christopher Barela, Director of the Detention Center, and Daniel Zemek, Medical Director of the Detention Center, liable for depriving Plaintiff of his constitutional rights to humane conditions of confinement, adequate medical care, and procedural due process, and as a result of these constitutional deprivations, found that Plaintiff was entitled to compensatory damages from the County, Barela, and Zemek, and to punitive damages from Barela and Zemek.   *Id.*   The jury awarded Plaintiff $3 million in punitive damages against Barela, and $3.5 million in punitive damages against Zemek.   *Id.*   The jury further found Defendant Barela liable for violating Plaintiff's rights under the Americans with Disabilities Act, and as result of this violation, found that Plaintiff was entitled to compensatory damages from Barela.   *Id.*   Next, the jury found the Detention Center liable for the torts of false imprisonment and negligent operation or maintenance of a building, and as a result of this liability, found that Plaintiff was entitled to compensatory damages from the Detention Center.   *Id.*   Finally, the jury fixed the amount of compensatory damages at $15.5 million, to include $500,000 for each month that Plaintiff was incarcerated, plus an additional $1 million for each year since Plaintiff's release from custody.   *Id.*

The Court entered a Final Judgment in favor of Plaintiff on February 17, 2012.   Doc. 105 (Final Judgment).   Thereafter, on March 16, 2012, Defendants filed the instant motion ("Motion to Reconsider"), requesting reconsideration of the Court's decision denying their First Recusal Motion.   Doc. 122 at 1.   Plaintiff filed a response in opposition on April 6, 2012.   Doc. 129. Defendants' reply followed on April 23, 2012.   Doc. 135.

## LEGAL STANDARD

Defendants summarily indicate that their motion to reconsider is made pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure.   "The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.'"   *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).   Rather, the Rules allow a party against whom an adverse judgment has been rendered to file either a motion to alter or amend the judgment pursuant to Rule 59(e), or a motion seeking relief from the judgment pursuant to Rule 60(b).   *See id.*   Under either rule, a motion to reconsider is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."   *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).   Accordingly, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."   *Id.*

Under Rule 59(e), a party may file a motion to alter or amend a judgment within 28 days of entry of that judgment.   Fed. R. Civ. P. 59(e).   "The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence."   *Monge v. RG Petro-Machinery (Group) Co. Ltd.*, __ F.3d __, 2012 WL 6062511, *10 (10th Cir. Dec. 7, 2012) (citation omitted); *Phelps v. Hamilton*, 122 F.3d 1517, 1523 (10th Cir. 1997) (citation omitted).   Thus, a Rule 59(e)

motion may be granted where "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012.

Under Rule 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for six enumerated reasons.   Fed. R. Civ. P. 60(b).   In particular, the Court may grant relief pursuant to Rule 60(b) in cases of "mistake, inadvertence, surprise, or excusable neglect," where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," or for "any other reason that justifies relief."   Fed. R. Civ. P. 60(b)(1), (2), (6).   Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *Servants of the Paraclete*, 204 F.3d at 1009.   "Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal."   *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004).

## DISCUSSION

Defendants ask the Court to "reconsider its prior refusal to recuse itself" from this matter, and "grant a new trial as a consequence of its earlier failure to do so," or in the alternative, "remove itself from consideration of further matters in this case."   Doc. 122 at 1.   In support of this request, Defendants essentially raise two arguments:   first, that the Court mistakenly denied their First Recusal Motion; and second, that two events at trial show that the Court indeed is biased against them.   In making these arguments, Defendants utterly fail to articulate the legal standard for a motion to reconsider under either Rule 59(e) or Rule 60(b), much less attempt to demonstrate that they have met their burden under that standard.   Indeed, Defendants fail even to identify which of the Rule 60(b) subsections they believe are relevant to their motion.   Rather, in contravention of clear authority, Defendants seek "a second opportunity . . . to make [their]

4

strongest case, to rehash arguments, [and] to dress up arguments that previously failed" – precisely the sort of relief a losing party is foreclosed from seeking on a motion to reconsider. *Kuston Signals, Inc. v. Applied Concepts, Inc.*, 247 F. Supp. 2d 1233, 1235 (D. Kan. 2003), *aff'd*, Nos. 03-1431, 03-1432, 2004 WL 2370634 (10th Cir. Oct. 15, 2004).   Because Defendants fail to demonstrate a manifest error of law in need of correction, present any newly discovered evidence, or recite any exceptional circumstance warranting relief from judgment, the Court finds that reconsideration of the Original Opinion is not warranted under either Rule 59(e) or Rule 60(b).

I.     There is No Valid Basis for the Court to Reconsider the Original Opinion.

In its Original Opinion, the Court denied Defendants' First Recusal Motion, finding that Defendants failed to provide a sufficient basis to justify recusal under either 28 U.S.C. Section 455(a) or 28 U.S.C. Section 455(b)(1).   In arguing that the Original Opinion was wrongly decided, Defendants point to no newly discovered evidence that, if considered by the Court, would change the outcome of its earlier decision, any "facially obvious errors of law" that require correction, or any other exceptional circumstance that would justify relief.   *Van Skiver*, 952 F.2d at 1244.   Moreover, Defendants nowhere contend that the Court misapprehended the legal standard for recusal under Section 455(a) or Section 455(b)(1), the facts that formed the basis for their recusal request, or Defendants' position as to the application of the relevant standard to those facts.   Rather, Defendants take issue with the fact that the Court reached a position different from theirs as to the proper application of the relevant standard to the facts.   Ultimately, Defendants do no more than revisit their original argument that recusal is appropriate, and insist that, simply because the Court determined that recusal is *not* appropriate, the Court's decision was incorrect.

Throughout their brief, Defendants call into question the Court's reasoning, noting, for example, that the Court's analysis was inadequate to "address the concerns of the recusal statute,"

and that the Court put 'too fine" a distinction on its comparison of the issues in this case with the subject matter of my two visits to the Detention Center.[1]   Doc. 122 at 7-8, 10-11; Doc. 135 at 9. The Court, however, addressed in detail each of Defendants' arguments in favor of recusal, and explained why those arguments were insufficient to meet the standard under either Section 455(a) or Section 455(b)(1).   *See* Doc. 112 (Original Opinion) at 7-13.   Accordingly, Defendants' real concern appears to be not that the Court's reasoning was inadequate, but that it led to a conclusion contrary to their own.   But arguing that the Court "got it wrong," simply because its reasoning led to a conclusion contrary to the one sought by a losing party, is insufficient to warrant reconsideration.

Defendants come closest to arguing a misapprehension of the law in their discussion of this Court's previous decision in *McClendon v. City of Albuquerque*, Civ. No. 95-24, Doc. 718 ("*McClendon* Opinion"), granting Defendant Bernalillo County's motion to disqualify.   In *McClendon*, in January 1995, a class of individuals confined in the Bernalillo County Detention Center ("BCDC") filed a lawsuit alleging unlawful conditions of confinement.   *See* Civ. No. 95-24, Doc. 699 at 2.   The Court certified "a class of all persons presently confined in BCDC or who may/will be so confined in the future" and a "subclass of all persons with mental and/or developmental disabilities who are, or in the future may be, detained at BCDC."   *Id.*   In November 1996, the parties entered into settlement agreements set forth in two Court orders.   *Id.* For the next ten years, the parties engaged in litigation to ensure continuing compliance with the Court orders.   *Id.*

---

[1] Defendants also call into question the Court's discharge of its duties as Chief Judge, opining that it was not my place "to ensure that the constitutional needs of federal detainees are met in a detention center."   Doc. 122 at 9. Defendants' apparent disagreement with the notion that the judiciary should be concerned about the constitutionality of the system subject to our oversight provides no basis for reconsideration of the Original Opinion.

In June 2003, the defendants opened a new facility, the Metropolitan Detention Center ("MDC"), and transferred all of the *McClendon* class and subclass members from BCDC to MDC. *Id.* at 2-3.   After further litigation, in 2005, the parties entered into new stipulated settlement agreements, approved by the Court, which addressed the conditions of confinement at MDC.   *Id.* at 3-4.

After the transfer, the BCDC facility was renamed the Regional Corrections Center ("RCC").   *Id.* at 4.   At the time the Court approved the 2005 settlement agreements, the defendants represented to the Court that RCC had been leased to Cornell Companies, Inc., that Cornell intended to renovate the facility and use it to house federal detainees pursuant to a contract with the United States, and that Cornell had sole operational authority over RCC.   *Id.*   More than two years later, the plaintiffs discovered, and disclosed to the Court, that Bernalillo County in fact had continued to maintain operational and management authority over RCC since at least June of 2004, and, in March 2005, had entered into an agreement to house federal detainees at RCC.   *Id.* at 6.   Because the *McClendon* settlement agreements were intended to encompass all facilities operated or controlled, directly or indirectly, by Bernalillo County, its continued operation and control of RCC meant that RCC, in addition to MDC, fell within the purview of the settlement agreements, and thus within the Court's oversight of those agreements.   *See* Civ No. 95-24, Doc. 718 at 1-2.

Before learning of Bernalillo County's role in the operation and control of RCC, the Court began receiving numerous complaints from federal detainees held at RCC about the availability of drugs, inadequate medical care, and unsanitary conditions.   *Id.* at 2-3.   Based on those complaints, I made three visits to RCC, where I "witnessed the most deplorable conditions [I] had ever encountered at a detention facility."   *Id.* at 3.   After the Court issued a Memorandum

Opinion and Order finding that the defendants had misrepresented material information to the plaintiffs and to the Court, *see* Civ. 95-24, Doc. 699, Bernalillo County moved to disqualify the Court from the *McClendon* case.   Civ. 95-24, Doc. 702.   In support of their motion, Bernalillo County argued that I had engaged in an "extrajudicial factfinding and evidence gathering" mission related to the lawsuit, engaged in *ex parte* communications, and attempted to use my position as a federal judge to arrange a visit with my sister-in-law, Carla Maestas, who was an inmate at MDC in April 2007.  *Id*.

In the *McClendon* Opinion, the Court strongly rejected all of the accusations leveled against it by the defendants, found that the defendants' motion was untimely, and declined to recuse pursuant to Section 455(b)(1).   *See* Civ. 95-24, Doc. 718.   Nonetheless, the Court determined that, based on "all of the facts at issue," recusal was appropriate under Section 455(a) for two reasons.   First, the Court explained that, since RCC had been identified as a facility subject to the *McClendon* lawsuit, and since conditions at that facility would "undoubtedly be an issue going forward, . . . [t]he Court's expression of its opinion regarding RCC in the past" provided a sufficient basis for a reasonable person to question my impartiality in the *McClendon* case.  *Id*. at 15.   Second, the Court found that because of my relationship with Ms. Maestas, who, for a brief time, was a member of the plaintiff class, a reasonable person might infer that I could not be impartial. *Id*. at 16.

Defendants' reliance on the *McClendon* Opinion is unavailing.   As an initial matter, the *McClendon* Opinion was entered on May 18, 2009, more than two years before Defendants filed their First Recusal Motion on December 1, 2011.   Accordingly, the *McClendon* Opinion and any arguments based on that opinion were available to Defendants at the time their First Recusal Motion was filed.   For this reason alone, on their instant Motion to Reconsider, Defendants are

foreclosed from advancing new arguments based on the *McClendon* Opinion.   *See Servants of the Paraclete*, 204 F.3d at 1012.

Even if Defendants' reliance on *McClendon* were permissible, the facts of that case are clearly distinguishable from those here.   While, as Defendants note, the Court in *McClendon* recused despite the untimeliness of Bernalillo County's motion, the Court made this determination based on factors, entirely absent here, that reasonably called into question my impartiality and thus necessitated recusal under Section 455(a).   Specifically, in *McClendon*, I had visited RCC to investigate the general conditions of confinement at that facility, an issue which ultimately fit squarely within those before the Court.   In contrast, here, my visit to the Detention Center occurred two years after Plaintiff had been released, and was in response to and addressed issues materially distinct from those raised by Plaintiff herein.   *See* Doc. 112 at 9-10.   Further, in *McClendon*, I unequivocally expressed a negative opinion about the conditions at RCC; here, none of the statements attributable to me provide the factual basis necessary to call my impartiality into question.   *See id.* at 11.   Finally, my familial relationship with a former class member in *McClendon* provided an independent basis for recusal; indisputably, no such basis exists here. Accordingly, the fact that the Court here reached a conclusion contrary to the one it had reached in *McClendon*, despite the untimeliness of the motion filed in each case, demonstrates not that the Original Opinion misapprehended the law as applied in *McClendon*, but rather that the Court was called upon to apply that same law to an entirely different set of circumstances.[2]   *See Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) ("[C]ases within § 455(a) are extremely fact driven and

---

[2] Defendants appear to be arguing that the Court here found untimeliness to be determinative, while it reached the opposite conclusion in *McClendon*.   This argument ignores that untimeliness was only one of the bases on which the Court denied Defendants' First Recusal Motion.   The Court also specifically found that Defendants failed to establish that recusal is proper under either Section 455(a) or Section 455(b)(1).   Defendant's request for recusal thus would have been without merit even if it had been timely.

must be judged on [their] unique facts and circumstances more than comparison to situations

considered in prior jurisprudence.").

Defendants are equally mistaken that the *McClendon* Opinion calls into question the

Court's determination in the Original Opinion that my communications with Detention Center

staff during my visits were not improper *ex parte* communications.   In the *McClendon* Opinion, in

the course of analyzing the defendant's claim of *ex parte* communications, the Court noted that

none of the individuals at RCC with whom I spoke were parties with respect to RCC at the time of

the communications.   Civ. No. 95-24, Doc. 718 at 10.   Nowhere in the *McClendon* Opinion,

however, did the Court hold that communications are necessarily *ex parte* simply by virtue of the

fact that they occur with individuals who are party to a pending case.   Indeed, to the contrary, the

Court specifically noted that while two of the individuals with whom I communicated were

defendants in the present *McClendon* lawsuit, the Court was "not forbidden from communicating

with them about matters unrelated to the lawsuit."   *Id.* at 10 n.3.   Accordingly, the Court

concluded that, because "[i]n 2007, RCC was unrelated to the present lawsuit, . . . the Court's

meeting with them about RCC was not improper."   *Id.*   This reasoning is identical to the Court's

reasoning in the Original Opinion.   *See* Doc. 112 at 7-8 (rejecting the claim of *ex parte*

communications where none of my discussions with Defendant Barela or any other Detention

Center staff involved Plaintiff or the instant case).   Accordingly, the Court's interpretation of the

law on *ex parte* communications and its application of that law to the facts of this case are entirely

consistent with its previous interpretation and application of that law in *McClendon*.

Finally, by combining into one timeline events that occurred in three unrelated cases,

namely, this case, *McClendon*, and the case of *Bravo v. Board of County Comm'rs of Doña Ana

County*, Civ. No. 08-10, a putative class action filed in 2008 on behalf of inmates at the Detention

10

Center, Defendants attempt to create an inference of impropriety that has no basis in reality. Specifically, Defendants note that only three days after the Court's decision to recuse in *McClendon*, the *Bravo* case was reassigned to another judge; yet, in this case, the Court refused to disqualify itself.   Defendants have no inkling of the basis for the reassignment of the *Bravo* case, which was entirely unrelated to my recusal in *McClendon*.   Further, Plaintiff was never a member of the class in *Bravo*:   he was released before the *Bravo* litigation began, and in fact, class certification was never obtained in *Bravo* at all.   There thus are no meaningful connections, let alone nefarious ones, to be drawn from the timing of events in three cases whose only similarity was their assignment to this Court.

II.   Events At Trial Do Not Establish Bias Warranting Recusal.

Defendants argue that, during trial, I displayed a bias against them in both an evidentiary ruling and comments to a witness.   According to Defendants, this display of bias prejudiced their case, and requires reconsideration of my earlier decision not to recuse.   The Court disagrees.

First, Defendants point to the fact that, although I had originally ruled admissible some evidence of remedial measures, I ultimately decided not to allow Defendants to present evidence of remedial measures.   *See* Doc. 103 (Trial Tr. 1/23/12) at 31.   According to Defendants, as a consequence of my ruling, they "lost their opportunity to rebut Plaintiff's evidence tending to show that Defendants were deliberately and culpably indifferent to the conditions to which Plaintiff was exposed."   Doc. 122 at 4.   As an initial matter, the law is clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."   *Liteky v. United States*, 510 U.S. 540, 555 (1994).   My evidentiary ruling to exclude evidence of remedial measures – a ruling which Defendants do not claim either abused my discretion or was against the weight of authority – is no exception to this rule.   Further, Defendants suffered no prejudice from my

11

exclusion of remedial measures as, despite my ruling, Defendants proceeded to offer such evidence, Plaintiff failed to object to its admission, and the jury thus had heard the evidence when it rendered its verdict.   *See* Doc. 116 (Trial Tr. 1/23/12) at 90-91; 93-94; 113-117.   Accordingly, my ruling had no adverse impact on Defendants' case.

Next, Defendants note my statements to Plaintiff's witness, John Oates, a former inmate at the Detention Center.   His testimony included a discussion of "the emotional upset he had experienced while waiting in the holding cell the day before."   Doc. 122 at 15.   At the conclusion of his testimony, I stated:

> Thank you very much, Mr. Oates.   And I'm sorry about yesterday, but I thank you very much for coming today and answering all of our questions.
>
> And I want to thank the officers very much for making another trip today. Sorry for the inconvenience yesterday.   But thank you very much for driving Mr. Oates today.   All right.
>
> Mr. Oates, best to you.

Doc. 111 at 96-97 (Tr. 1/19/12).   According to Defendants, my statements "projected empathy for Oates's – and thus Plaintiff's – distress," and thus were "prejudicial to Defendants because [they] suggested that society owed Plaintiff, too, an apology."   Doc. 122 at 15.

Notably, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . [T]hey *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."   *Liteky*, 510 U.S. at 555 (emphasis in original).   My remarks of appreciation and apology fall far short of demonstrating a high degree of favoritism to Plaintiff or antagonism to Defendants.   Read in context, it is clear that I expressed to the correctional officers who transferred Mr. Oates – just as much a proxy for the Detention Center as Defendants claim Mr. Oates was for Plaintiff – the same degree of "empathy" I expressed to Mr. Oates himself.

12

Further, it is entirely unreasonable to interpret my comments, clearly addressed to the specific circumstances of Mr. Oates' trip to the Courthouse, as "legitimiz[ing] Plaintiff's claims."   Doc. 122 at 15.   Accordingly, Defendants have failed to demonstrate that my comments at trial support their challenge to my impartiality.

### CONCLUSION

Neither of the arguments raised by Defendants in support of their request for reconsideration, namely, that the Court mistakenly denied their First Recusal Motion, and that two events at trial show that the Court is biased against them, have any merit.   Further, in making these arguments, Defendants fail to articulate the legal standard for a motion to reconsider under either Rule 59(e) or Rule 60(b), much less attempt to demonstrate that they have met their burden under that standard.   Rather, Defendants improperly seek a second bite at the proverbial apple. Because Defendants fail to demonstrate a manifest error of law in need of correction, present any newly discovered evidence, or recite any exceptional circumstance warranting relief from judgment, Defendants' request that the Court reconsider its prior refusal to recuse itself and either grant a new trial or remove itself from consideration of further matters is not warranted under either Rule 59(e) or Rule 60(b).

**IT IS THEREFORE ORDERED** that Defendants' Renewed and Supplemented Recusal Motion [Doc. 122] is **DENIED**.

DATED this 14th day of January, 2013.

MARTHA VÁZQUEZ
United States District Judge